184 N.J. Super. 416 (1981)
446 A.2d 533
IN RE BURROUGHS CORPORATION PROTEST  PROMIS PURCHASE RFP R01450. BURROUGHS CORPORATION, PETITIONER-APPELLANT,
v.
DIVISION OF PURCHASE AND PROPERTY, DEPARTMENT OF THE TREASURY, STATE OF NEW JERSEY, AND INTERNATIONAL BUSINESS MACHINES CORPORATION, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 1981.
Decided December 3, 1981.
*417 Before Judges MATTHEWS, PRESSLER and PETRELLA.
Cyrus J. Bloom argued the cause for appellant (Cyrus J. Bloom, attorney; Cyrus J. Bloom and James M. Cutler on the brief).
Joseph L. Yannotti, Deputy Attorney General, argued the cause for respondent Division of Purchase and Property (James R. Zazzali, Attorney General of New Jersey, attorney; Erminie L. Conley, Assistant Attorney General, of counsel, Joseph L. Yannotti on the brief).
Arthur Meisel argued the cause for respondent International Business Machines Corporation (Jamieson, McCardell, Moore, Peskin & Spicer, attorneys; Douglas G. Sanborn on the brief, Arthur Meisel of counsel and on the brief).
PETRELLA, J.A.D.
Burroughs Corporation appeals from the final determination of the Acting Director of the Division of Purchase and Property (Division) which awarded a contract for a data processing system and related support services to International Business Machines Corporation (IBM). The Division had solicited Requests for Proposals (RFP) for the acquisition of data processing equipment to implement a statewide Prosecutor's Management Information System known as PROMIS.
The complex nature of the proposal, as well as the marked differences among vendors in individual computer "hardware" and "software" characteristics and components, resulted in the RFP not requiring particular items of equipment. Rather, vendors were requested to propose a system that could meet the *418 overall objective and functional requirements of PROMIS. The RFP did detail specific minimum computer hardware and software requirements. However, other sections of the RFP clearly indicated that deviations from these requirements, if explained or justified, would be permissible. For instance, § 5.2 under "Vendors Proposal" specified that each bidder submit a "Proposal Overview" as follows:
This section will give a summary of the vendor's approach to fulfill the requirements in this RFP. The vendor will emphasize the rationale for the particular solution being proposed, and the unique advantage of the hardware and software selected. This section must be concise, factual, and directed at giving a quick overview of the proposal.
If the vendor's proposal does not meet all the minimum terms and conditions of the RFP or specifications, each such deviation must be listed in this section together with the vendor's explanation for the deviation. Failure to comply fully with this requirement will result in the vendor being penalized or possibly disqualified during the evaluation.
Certain factors to be considered by a "Technical Evaluation Committee" (committee) for each proposal were set forth in § 7.1 of the RFP. Conformance to the hardware and software requirements in the RFP would be used in the evaluation, but exact conformance was not specified as requisite to the acceptance of the bid. The Division was authorized to award the contract in whole or in part to the vendor "best meeting specifications and conditions." The technical evaluation criteria, in addition to considering the proposal with respect to the RFP requirements, also took into account available support service, knowledge and familiarity of the vendor with similar applications; "performance of vendor's hardware, software and personnel in the functional benchmark test"; "completeness of the vendor's proposal to the RFP" and "recommendations by the vendor that will benefit the State of New Jersey." Bidder's worksheets also sought responses regarding overall system characteristics and required bidders "to identify system characteristics that exceed or fail to meet specifications or requirements."
*419 After the RFP was distributed to numerous vendors a bidder's conference was held at which representatives of 26 companies[1] participated. Subsequent to that meeting an "Additions/Clarifications to the Request for Proposal" was issued. This addendum reflects that deviations from the specifications would not disqualify the bid. Thus, item 5 stated that proposals would be accepted "from vendors which they feel best satisfy the specifications contained in the RFP."
Item 31 of the addendum indicated that deviations from the referenced software standards "must be fully supported by the vendor and the vendor should indicate their [sic] software solutions and approaches in the future."
Item 35 further explained:
The items listed in the hardware and software requirements area are considered mandatory items except where indicated by an asterisk. Those items are considered optional items. The State is looking for the most comprehensive response to all requirements and pricing for the various alternatives possible in a solicitation of this type. Bidders' proposals should detail those items which the vendor feels are not directly addressed by their proposal and should indicate what their solution is to handle the function intended in the requirement. All these items will be evaluated....
Significantly, item 62 of this addendum modified the second paragraph of § 5.1 of the RFP. It changed the requirement that all instructions, terms and conditions in the specifications and bid forms "must be met in order to qualify for consideration of award," by deleting the quoted phrase. The original provision was made precatory, rather than mandatory, when it was changed to read: "All instructions, terms and conditions contained on the Advertised Bid Proposal Form (PB5A), and subsequent revisions, should be met and will be considered in the evaluation." (Emphasis supplied).
Burroughs and IBM were among the five vendors who thereafter submitted timely proposals. These proposals were reviewed by the committee which consisted of representatives of *420 the Division, the Division of Systems and Communications, Division of Criminal Justice and the Administrative Office of the Courts. This committee then sought clarifications and additional information by way of written questions sent to each bidding vendor. One of these vendors then requested that its bid be withdrawn from consideration. The committee continued its evaluation on the remaining vendors and found that all "had areas where they did not specifically meet the needs of the State." The committee continued to consider all the proposals "in accordance with item numbers 35 and 62 of the Additions/Clarifications that were sent to each participating vendor." The committee then invited the remaining vendors to participate in a benchmark demonstration of their equipment. After the demonstration the committee issued its final report and unanimously recommended that the contract be awarded to IBM because its proposal was "the most responsive to the State's needs" and was "the most cost-effective."
Thereafter, the Acting Director announced his intention to award the contract to IBM. He gave Burroughs an opportunity to be heard and personally listened to testimony over eight hearing days. The Acting Director then reaffirmed his initial determination and awarded the contract to IBM.
Burroughs points to 12 separate instances where it claims that IBM's proposal deviated from the RFP. Burroughs contends that IBM's bid did not conform with what it argues were the mandatory requirements of the RFP and the specifications, and should, therefore, be declared invalid. Implicit in its argument is the allegation that such deviations were material. See Terminal Constr. Corp. v. Atlantic Cty. Sewerage Auth., 67 N.J. 403, 411 (1975).
Under N.J.S.A. 52:34-12(d), even though the State is not required to award a contract to the lowest responsible bidder, or even award any contract, an award may only be made to that *421 responsible bidder whose bid conforms to the invitation for bids. Subsection (d) states:
... [A]ward shall be made with reasonable promptness by written notice to that responsible bidder whose bid, conforming to the invitation for bids, will be most advantageous to the State, price and other factors considered. Any or all bids may be rejected when the State Treasurer or the Director of the Division of Purchase and Property determines that it is in the public interest so to do.
In interpreting this section we have recognized the "great flexibility" accorded the Director in determining the bid most advantageous to the State. In re Honeywell Info. Systems, Inc., 145 N.J. Super. 187, 200 (App.Div. 1976), certif. den. 73 N.J. 53 (1977). It is not the function of this court to substitute its discretion for that of the Director. Commercial Clean. Corp. v. Sullivan, 47 N.J. 539, 549 (1966).
Our review of the record satisfies us that the State's request for proposals was for a data processing system capable of implementing PROMIS in the most cost-effective manner and for a system most advantageous to the State, all factors considered. While the specifications in certain areas do contain specific performance requirements, it was nonetheless clear from the language of the RFP, the addendum/clarification and the bidders' conference that some deviation from these requirements would not disqualify a bid. Bidders were specifically requested to consider and propose alternative solutions which would be cost-effective and would meet the overall functional requirements of the system. It thus bears repeating, as item 35 in the addendum stated,
The state is looking for the most comprehensive response to all requirements and pricing for the various alternatives possible in a solicitation of this type. Bidders' proposals should detail those items which the vendor feels are not directly addressed by their proposal and should indicate what their solution is to handle the function intended in the requirement. All these items will be evaluated.
The extremely complex and sophisticated system had numerous components. Even by current standards there are highly technical facets to it. All bidders were advised of the evaluation *422 criteria which transcended individual hardware and software components. The proposal by IBM could reasonably be found by the Acting Director to have conformed to the invitation for bids, as amended and clarified, and as discussed at the bidders' conference. We are satisfied that under the circumstances the determination of the Acting Director was neither arbitrary, capricious nor unreasonable. In re Honeywell Info. Systems, Inc., supra. We are further satisfied that neither the expressed nor implied legislative policies in N.J.S.A. 52:34-12(d) were violated in his determination.
Nor could we find on this record that the types of deviation claimed by Burroughs were material under the circumstances of this request for proposal, as supplemented and clarified. Terminal Constr. Corp. v. Atlantic Cty. Sewerage Auth., supra. The RFP and addendum clearly indicated here that deviations from the stated specifications, although they "should be met," would not thereby render a proposal unacceptable so long as the basic functional requirements were met. All of these factors were subject to and were considered in the evaluation process. In light of the bidders' conference and the "additions/clarifications" we conclude that if there was any waiver in this case, it was highly unlikely that it deterred any potential bidders.
We find no merit to Burroughs' contention that the Acting Director's decision was not reasonably supported. Motorola Com. & Electronics v. O'Connor, 115 N.J. Super. 317, 320-321 (App.Div. 1971).
In view of our decision we need not consider the defenses raised by the Division and IBM that Burroughs should be estopped from challenging the award of a contract which it actively sought through a competitive bid process it now attacks, or that Burroughs failed to seek prompt review which affected potential funding.
Affirmed.
NOTES
[1] One, NCR Corp., appears to have been entered twice on the list of "Bidders' Conference Attendance."